

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

ASSOCIATED STUDENTS OF THE UNIVERSITY OF CALIFORNIA AT SANTA BARBARA,

Plaintiff,

v.

REGENTS OF THE UNIVERSITY OF CALIFORNIA, et al.,

Defendants.
_______________________________________/

No. C 05-04352 SI

**ORDER DENYING APPLICATION FOR TEMPORARY RESTRAINING ORDER**

On October 31, 2005, the Court heard argument on plaintiff's application for a temporary restraining order. For the following reasons, the Court DENIES the application.

**BACKGROUND**

On November 8, 2005, the state of California will hold a special election on eight ballot initiatives. One of these initiatives, titled Proposition 76, is at the center of the current dispute. The California Secretary of State describes the subject matter of Proposition 76 as follows: "State expenditures would be subject to an additional spending limit based on an average of recent revenue growth. The Governor would be granted new authority to unilaterally reduce state spending during certain fiscal situations. School and community college spending would be more subject to annual budget decisions and less affected by a constitutional funding guarantee." Cal. Sec. of State, Official Voter Information Guide, available at http://www.voterguide.ss.ca.gov/ballot_measure_summary.shtml.

Plaintiff, the Associated Students of the University of California at Santa Barbara ("ASUCSB"), is the "official organization authorized to administer student government and student extracurricular affairs" at the

United States District Court
For the Northern District of California

Dockets.Justia.com

United States District Court
For the Northern District of California

University of California at Santa Barbara ("UCSB"). Pl. Compl. at ¶ 1. ASUCSB believes that the passage of Proposition 76 would "make it easier to cut higher education funding, increase student fees, and decrease appropriations to state-funded academic preparation programs." Id. at ¶ 22. Thus, on October 6, 2005, ASUCSB took a unanimous position in opposition to Proposition 76. It also passed a resolution allocating $1,000 of student funds to print flyers and educate voters about the perceived negative effects the proposition would have on higher education.

Based upon general University of California ("UC") policies, UCSB's administration refused to disburse the $1,000 from the student fee accounts. The administration claimed that such a disbursement would have violated Section 66.00 of UC's Polices Applying to Campus Activities, Organizations, and Students ("UC Campus Policies"), which provides in relevant part: "[S]tudent governments may not use University resources to support or oppose a particular candidate or ballot proposition in a non-University political campaign." Declaration of Christopher M. Patti in Opposition to Application for Temporary Restraining Order ("Patti Decl."), Exh. 2.

On October 25, 2005, ASUCSB filed this suit, claiming that defendants had violated its First Amendment rights under color of state law in violation of 42 U.S.C. § 1983, and seeking declaratory and injunctive relief. In its current application, ASUCSB seeks a temporary restraining order ("TRO"), enjoining defendants from enforcing Section 66.00 of the UC Campus Policies.

## LEGAL STANDARD

The standard for granting a TRO is substantially the same as the standard for granting a preliminary injunction. This standard "balances the plaintiff's likelihood of success against the relevant hardship to the parties." Clear Channel Outdoor, Inc. v. City of Los Angeles, 340 F.3d 810, 813 (9th Cir. 2003). Under Ninth Circuit law, this balancing act can be performed through two related tests:

> Under the traditional test, a plaintiff must show: (1) a strong likelihood of success on the merits, (2) the possibility of irreparable harm, (3) a balance of hardships favoring plaintiff, and (4) advancement of the public interest (in certain cases). The alternative test requires that plaintiff demonstrate *either* a combination of probable success on the merits and the possibility of irreparable injury *or* that serious questions are raised and the balance of hardships tips sharply in his favor. These two formulations represent two points on a sliding scale in which the required degree of irreparable harm increases as the probability of success decreases. They are not separate tests but rather outer reaches of a single continuum.

United States District Court
For the Northern District of California

Ranchers Cattlemen Action Legal Fund United Stockgrowers of Am. v. USDA, 415 F.3d 1078, 1092-93 (9th Cir. 2005) (internal citations omitted). To issue a TRO, a court must further find that "there is some threat of immediate irreparable injury, even if that injury is not of great magnitude." Quokka Sports, Inc. v. Cup Intern. Ltd., 99 F. Supp. 2d 1105, 1109 (N.D. Cal 1999).

**DISCUSSION**

Plaintiff claims that defendants' policy infringes upon its First Amendment rights. It argues that the only way its rights can be adequately protected is if the Court issues a TRO allowing it to spend student funds to oppose Proposition 76 before the November 8 special election. The Court finds that a TRO is not warranted because plaintiff has not established a likelihood of success on its First Amendment claim.[1]

There can be little doubt that lobbying in general elections constitutes core political speech, deserving of the full protections of the First Amendment. See, e.g., First Nat'l Bank of Boston v. Bellotti, 435 U.S. 765, 776, 98 S. Ct. 1407, 1415 (1978) (statute that bars banks from spending money for the purpose of influencing referendums submitted to the general population "is at the heart of the First Amendment's protection"). Indeed, defendants do not contest this point. Rather, the parties' central point of dispute is over whether ASUCSB is a governmental entity or a student organization. Defendants argue that ASUCSB is the former, and that, as such, it has no independent First Amendment rights. See, e.g., Rosenberger v. Rector and Visitors of University of Virginia, 515 U.S. 819, 833, 115 S. Ct. 2510, 2518-19 (1995) ("[W]hen the State is the speaker, it may make content-based choices."); Downs v. Los Angeles Unified Sch. Dist., 228 F.3d 1003, 1017 (9th Cir. 2000) (holding that when school district chooses to speak it may do so "without the constraint of viewpoint neutrality"); Demery v. Arpaio, 378 F.3d 1020, 1032-33 (9th Cir. 2004) (rejecting argument that sheriff, in official capacity, had cognizable First Amendment rights). ASUCSB argues that it is the latter, and that the restrictions are therefore unconstitutional. See Board of Regents of the Univ. of Wisconsin v. Southworth, 529 U.S. 217, 235, 120 S. Ct. 1346, 1357 (2000) (distinguishing student speech from speech

---

[1]Because the Court finds that plaintiff has not demonstrated a likelihood of success on the merits, it does not reach plaintiff's contentions that there is the possibility of irreparable harm, that the balance of hardships tips in plaintiff's favor, and that the public interest favors injunctive relief. See Johnson v. Cal. State Bd. of Accountancy, 72 F.3d 1427 (9th Cir. 1995).

United States District Court
For the Northern District of California

of university); First Nat'l Bank, 435 U.S. at 776, 98 S. Ct. at 1415.

Based on the arguments the parties have submitted thus far, the Court believes that plaintiff does not have a strong likelihood of success on its argument that UC's policy violates its First Amendment rights. Rather, the Court finds that defendants are likely to prevail in their argument that ASUCSB is a unit of the University, and that the restrictions on its speech are therefore permissible.

As an initial matter, the UC Regents is undoubtedly an arm of the state government. Article IX, section 9 of the California Constitution establishes the UC system, over which it grants the UC Regents "full powers of organization and government." Cal. Const. Art. IX, § 9. California courts have recognized that the UC Regents is a "statewide administrative agency." Ishimatsu v. Regents of the Univ. of Cal., 266 Cal. App. 2d 854, 864 (Cal. App. 1968); cf. Southworth, 529 U.S. at 221, 120 S. Ct. at 1350 (recognizing that the University of Wisconsin is a state government organization). Plaintiff does not dispute that the UC Regents is an arm of the state government; indeed, plaintiff's § 1983 claim depends upon it.

As the arm of the state government responsible for administering the UC system, UC Regents has expressed the intent that student governments be regarded as official units of the University. For example, the Policy on the Status of the Associated Students provides:

> 1. The Regents reaffirm that the Associated Students on the several campuses of the University are official units of the University exercising authorities concerning student affairs by delegations from the Regents, The President, and the Chancellors[.]

Patti Decl., Exh. 1. Section 61.10 of the UC Campus Policies is consistent with this view: "It shall be the responsibility of student governments . . . to ensure that their enabling documents, as well as all their programs and activities are consistent with the status of such governments as official units of the University." Patti Decl., Exh. 2, at 9; see also UC Campus Policies § 61.15 (granting student governments authority to "provide such additional services to students as may be determined by the Chancellor or the Chancellor's designee to be consistent with the status of student governments as units of the University").

A review of the powers of student governments also supports the view that student governments are units of the University. UC Regents has delegated certain functions and authorities to student governments that are not provided to ordinary campus organizations. For example, student governments are the only student organizations authorized to use the name "University of California." Def. Br. at 3; UC Campus Policies §

United States District Court
For the Northern District of California

70.40. In addition, student governments are authorized to administer and distribute university fees. See Pl. Compl. at ¶¶ 10-11; UC Campus Policies § 61.13. They are also empowered to raise funds through student referendum to increase mandatory fees, a power that is explicitly withheld from Registered Campus Organizations. See UC Campus Policies at §§ 82.00, 86.12. As the campus organizations charged with exercising these powers, student governments hold a unique status among campus organizations,[2] and are explicitly prohibited from becoming Registered Campus Organizations. See id. at § 70.00 ("An authorized student government of a campus shall not be eligible for registration also as a Registered Campus Organization.").

Given that the UC Regents consider student governments to be units of the University, that student governments exercise unique powers within the University, and that they are classified as entities distinct from other campus organizations, the Court finds it likely that defendants will prevail on their argument that ASUCSB are units of the UC system.

Plaintiff raises three arguments against its classification as a unit of the UC Regents, but none is convincing. First, plaintiff argues that UC policy expressly indicates that student government speech is distinct from that of the University. In support of this argument, plaintiff cites to Section 63.00 of the UC Campus Policies, which states that positions adopted by student government organizations "shall not be represented as or deemed to be positions of any entity of the University other than the student government." Plaintiff has not explained, however, how the authorization to adopt political positions indicates that the student governments are independent from the UC Regents. Indeed, the quoted language fully supports UC Regents' position that student governments are a "unit of the University."

Second, plaintiff argues that the Supreme Court decided in Southworth that "student speech was not the same as that of the University or its agents." Pl. Br. at 10. This argument does nothing to advance plaintiff's cause, however, because it assumes the precise question the Court must decide – whether student government speech is properly classified as student speech or the speech of the University.

Finally, plaintiff argues that its status as a 501(c)(3) nonprofit undermines the contention that it is the

---

[2]At oral argument, counsel for UC Regents also stated that student governments are the only student organizations that are considered units of the University.

United States District Court
For the Northern District of California

same as any other university unit. But plaintiff fails to provide any description of how, exactly, this means that it is not an entity within the UC system.[3]

Thus, from the arguments thus far presented, the Court finds that plaintiff is likely a unit of the UC Regents.[4] As such, no constitutional problem is raised by the Regents' choice to limit the manner in which plaintiff may use University resources in this initiative campaign. See Kotwica v. City of Tucson, 801 F.2d 1182, 1184-85 (9th Cir. 1986) (finding no First Amendment protection for government employee's speech made in her official capacity); Demery v. Arpaio, 378 F.3d at 1032-33 (9th Cir. 2004).

**CONCLUSION**

For the foregoing reasons and for good cause shown, the Court hereby DENIES plaintiff's application for a TRO (Docket No. 2).

Dated: November 1, 2005

---

[3]Plaintiff also argues that the UC Regents cannot justify its prohibition on student government lobbying in general elections based upon the California Supreme Court's decision in Stanson v. Motts, 17 Cal. 3d 206 (1976). Stanson held that, absent legislative authorization, a public official could not spend public funds to lobby for the passage of a bond initiative. Id. at 213-20. In reaching this conclusion, the court expressed concern over the constitutional issues such a use of public funds would raise. Id. at 218 ("[E]very court which has addressed the issue to date has found the use of public funds for partisan campaign purposes improper . . . .").

While plaintiff raises a number of reasons why the policies underlying the Stanson decision do not apply to this case, its argument misses the precise question before the Court. The question is not whether ASUCSB may legally spend student funds to advocate in general elections, but whether the UC Regents can legitimately ban such an expenditure. For the reasons discussed above, the Court concludes that the UC Regents can.

[4]Plaintiff cites to this Court's decision in Associated Students of the University of California at Riverside v. Regents of the University of California, No. C 98-0021 CRB, 1999 WL 13711 (N.D. Cal. Jan. 8, 1999), in support of its application for a TRO. That case, however, concerned only whether the California Supreme Court's decision in Smith v. Regents of the University of California, 4 Cal. 4th 843 (1999), required the UC Regents to ban the use of student activity fees for student government lobbying. The Court did not decide whether a ban on student government lobbying would violate the First Amendment, nor did it address the issue whether student governments were units of the UC Regents.

Susan Illston

SUSAN ILLSTON
United States District Judge



United States District Court
For the Northern District of California